Revised March 29, 1999

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 97-30595

---

BEVERLY  BAUER,

Plaintiff-Appellant,

VERSUS

ALBEMARLE CORPORATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

March 15, 1999

Before HIGGINBOTHAM, PARKER and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

**Background**

Beverly Bauer, the plaintiff/appellant, filed suit against Albemarle Corporation alleging

discrimination on the basis of her age in violation of the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. § 621 *et seq.*, and on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.

Mrs. Bauer[1] began working for Ethyl Corporation as a research chemist in 1981. Ethyl's Chemicals Group was reorganized in 1994 as Albemarle Corporation, a separate corporate entity. In 1993, prior to this reorganization, Mrs. Bauer was informed that her position would be eliminated as part of a reduction in force (RIF) designed to coincide with the spin-off of Albemarle. Mrs. Bauer subsequently learned that she was not terminated as part of the 1993 RIF but she was reassigned to another position. Her new position involved comparable duties and the same pay, with a lower maximum salary than her former job.

Dennis Bauer, Beverly's husband, was also employed by Albemarle. On February 1, 1995, Mr. Bauer was terminated for poor job performance. Mr. Bauer attempted to remove several documents from his office when he departed but his supervisor demanded that the documents remain on the premises. As a result of Mr. Bauer's actions, his office was searched. The search revealed information concerning Mr. Bauer's involvement with two businesses, Catherx Pharmaceuticals, Inc. (Catherx) and Saratoga Chemicals, Inc. (Saratoga). Mr. Bauer's involvement with Catherx and Saratoga was a violation of company policy, as the companies competed with Albemarle. Albemarle then filed suit against Mr. Bauer, alleging unfair trade practices because he divulged or intended to divulge its trade secrets to competing companies. In addition, Mrs. Bauer was immediately suspended because of the investigation into her husband's wrongdoing.

Mrs. Bauer was fired on February 21, 1995, after Albemarle determined that she knew of her

---

[1]Dr. Beverly Bauer and Dr. Dennis Bauer, her husband, are both research chemists, having Ph.D. degrees. To distinguish between the two appropriately and economically, however, we refer to them as Mr. and Mrs. Bauer rather than as doctors or by first names.

husband's outside activities but failed to disclose this information, a violation of the conflict of interest and confidentiality agreements she signed with Albemarle. Albemarle also suspected that Mrs. Bauer was directly involved with Catherx and Saratoga. These suspicions were heightened when Albemarle discovered that Mrs. Bauer had downloaded information onto her computer about one of the drugs it manufactured that was also of interest to Catherx.

At the time of her termination, Mrs. Bauer was forty-five years old. Because Mrs. Bauer was older than forty, she was within the class of individuals protected by the ADEA. 29 U.S.C. § 631(a). During Albemarle's suit against her husband, Mrs. Bauer attempted to negotiate a settlement with Albemarle because of her discharge. When settlement efforts failed, Mrs. Bauer lodged a complaint with the Equal Employment Opportunity Commission based on age and gender discrimination before filing this suit.

Albemarle objected to many of Mrs. Bauer's discovery requests. Albemarle's refusal to comply prompted a motion to compel which was granted, in part, by a magistrate. While the magistrate ruled that Mrs. Bauer was not entitled to discover statistical evidence related to the 1993 RIF, he directed Albemarle to provide certain information, including specific facts of Mrs. Bauer's wrongdoing. Albemarle responded to part of the discovery request but sought clarification regarding portions of the magistrate's order. Albemarle also filed a motion for summary judgment which the district court granted. At the time summary judgment was granted, discovery was still ongoing.

## Standard of Review

This court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). Summary judgment is proper when there is no genuine issue of material fact and the movant is

entitled to judgment as a matter of law. Questions of fact are viewed in the light most favorable to the nonmovant while questions of law are reviewed *de novo*. *Id.*

## General Principles

Title VII prohibits an employer from failing or refusing to hire or discharge an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA proscribes similar treatment on the basis of age. 29 U.S.C. § 623(a)(1). The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both statutes. *Meinecke v. H & R Block*, 66 F.3d 77, 83 (5th Cir. 1995) (per curiam). Initially, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To establish this *prima facie* case under Title VII, the plaintiff must prove that she is a member of a protected class, she was qualified for the position that she held, she was discharged, and after her discharge was replaced with a person who is not a member of the protected class. *Meinecke*, 66 F.3d at 83 (citation omitted). When the employer does not plan to replace the discharged plaintiff, the fourth element is "that after [the] discharge others who were not members of the protected class remained in similar positions." *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990). The first three elements of a *prima facie* case of age discrimination under the AEDA and gender discrimination under Title VII are identical. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). For the fourth element in an age discrimination case, the plaintiff must show that "[s]he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age." *Id.* The third alternative of this last element applies in circumstances where the plaintiff is not replaced. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995), *cert. denied*,

4

516 U.S. 1047 (1996).

Establishing a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 525, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996) (en banc). This presumption places on the defendant the burden of producing evidence that the challenged employment action was taken for a legitimate, nondiscriminatory reason. *Hicks*, 509 U.S. at 507, 113 S. Ct. 2742; *Burdine*, 450 U.S. at 254, 101 S. Ct. 1089; *Rhodes*, 75 F.3d at 992-93. The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, "*if believed by the trier of fact*," would support a finding that unlawful discrimination was not the cause of the employment action. *Hicks*, 509 U.S. at 507, 113 S. Ct. 2742; *Burdine*, 450 U.S. at 254-55, 101 S. Ct. 1089; *Rhodes*, 75 F.3d at 993.

If the defendant succeeds in carrying its burden of production, the presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture, and the trier of fact proceeds to decide the ultimate question of whether the plaintiff has proved that the defendant intentionally discriminated against her. *Hicks*, 509 U.S. at 511, 113 S. Ct. 2742; *Burdine*, 450 U.S. at 253, 101 S. Ct. 1089; *Rhodes*, 75 F.3d at 993. The plaintiff now must have "'the full and fair opportunity to demonstrate,' through presentati on of [her] own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision'", and that unlawful discrimination was. *Hicks*, 509 U.S. at 507-08, 113 S. Ct. 2742 (quoting *Burdine*, 450 U.S. at 256, 101 S. Ct. 1089); see *Rhodes*, 75 F.3d at 993.

**Discussion**

Because the facts underlying Mrs. Bauer's ADEA and Title VII claims are the same and the two claims involve similar evidentiary burdens, these claims will be addressed together. *Meinecke*, 66 F.3d at 83. Only a minimal showing is necessary to meet this burden. *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). At the time of her discharge, Mrs. Bauer was a member of two protected classes (she was over forty years of age and female) and she was adversely affected by Albemarle's decision. We see no error in the district court's decision that Mrs. Bauer had established her *prima facie* cases.

The next issue is whether Albemarle presented a legitimate non-discriminatory reason for discharging Mrs. Bauer. During its investigation of Mr. Bauer, Albemarle discovered that Mrs. Bauer was aware of her husband's involvement with Catherx and Saratoga, two companies which competed with Albemarle. For example, Mrs. Bauer was present at two lunch meetings when the activities of Catherx were discussed, so she understood the nature of Catherx's business. She also knew that funds from the joint checking account she shared with Mr. Bauer helped finance Catherx. Mrs. Bauer downloaded data on her computer dealing with a drug manufactured by Albemarle that was of interest to Catherx. Although she provided a job related reason for having this information, the fact that it was on her computer supported Albemarle's reasonable belief that Mrs. Bauer knew about and was involved in Catherx's business activities.

Finally, Mrs. Bauer knew that her husband and several Albemarle employees were involved in ventures which created a conflict of interest with their Albemarle jobs. Despite Mrs. Bauer's knowledge of her husband's involvement with Catherx and Saratoga, she never shared this information with Albemarle. She signed a conflict of interest agreement stating that neither she nor

6

any member of her immediate family had an interest in a company competing with Albemarle. This evidence supported Albemarle's reasonable belief that Mrs. Bauer had been disloyal to the company, and, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of her termination.

Mrs. Bauer argues that Albemarle had no reasonable basis to believe that she was disloyal, despite the actions of her husband. She asserts that neither Catherx nor Saratoga competed with Albemarle so there was no conflict of interest. However, Albemarle's belief that they were actual or potential competitors does not have to be proven to be correct in order for Mrs. Bauer's involvement with Carthex and Saratoga to be a legitimate, non-discriminatory reason for self-protective measures, so long as the belief is reasonable, not arbitrary, and not a likely pretext for unlawful discrimination. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). Likewise, Albemarle's belief that Mrs. Bauer was either actually or potentially a disloyal employee capable of harming the employer economically was not unreasonable under the circumstances and constituted a legitimate non-discriminatory reason for her discharge. Mrs. Bauer's knowledge of and possible involvement in her husband's outside business interests conflicting with his employer's interests were sufficient, if believed by the trier of fact, to "support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507, 113 S. Ct. 2742.

Given that Albemarle met its burden of showing a legitimate non-discriminatory reason for its employment decision, Mrs. Bauer must prove that Albemarle's stated reason was pretextual and that the real reason for her discharge was either her gender or her age. "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered

7

reason is false; a mere shadow of doubt is insufficient." *E.E.O.C. v. Louisiana Office of Community Services*, 47 F.3d 1438, 1443-44 (5th Cir. 1995). This court has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief. *Id.* at 1448. In the present case, we conclude that there is not an adequate evidentiary basis from which a reasonable trier of fact could find or infer that Albemarle's stated rationale for its employment action was pretextual.

Mrs. Bauer introduced evidence that, she contends, shows she was treated differently from a similarly situated Albemarle employee. Pat Stahly, an Albemarle employee, and Mr. Bauer were both involved in Catherx. Pat's wife, Barbara Stahly, was also employed by Albemarle. When Albemarle discharged Mr. Stahly for lying, Mrs. Stahly received a severance package from the company and was allowed to seek other employment rather than being discharged. Mrs. Bauer argues that Albemarle's actions were discriminatory because she was not offered a severance package. However, to demonstrate gender discrimination, Mrs. Bauer must show that she was treated differently from male employees because of her gender under similar circumstances, not merely that she was treated differently from other female employees. *Mayberry*, 55 F.3d at 1090. Thus, Mrs. Bauer failed to prove that Albemarle's explanations were pretextual.

We now address the timing of the motion for summary judgment and Mrs. Bauer's age discrimination claim. Mrs. Bauer states that she could not adequately defend the summary judgment motion because Albemarle did not comply with her discovery requests, in particular her request for statistical information concerning the 1993 reduction in force. This court recently held that a summary judgment motion can be decided without any discovery. *United States v. Bloom*, 112 F.3d 200, 205 n.17 (5th Cir. 1997). "'To obtain a continuance of a motion for summary judgment in order

8

to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact.'" *Stults v. Conoco, Inc.*, 76 F.3d 651, 657-58 (6th Cir. 1996) (quoting *Krimm v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).

In support of her age discrimination claim, Mrs. Bauer alleges that Albemarle has a history of terminating employees in the protected age category during reductions in force. Her brief makes conclusory allegations that this claim would be bolstered by additional discovery of statistical information. *See Union City Barge Line v. Union Carbide*, 823 F.2d 129, 136-37 (5th Cir. 1987) (vague assertions of the need for additional discovery are as unavailing as vague responses on the merits). But she does not adequately demonstrate to the court how that discovery would create a fact issue. As in *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991), the employer was entitled to summary judgment despite the plaintiff's claims of prematurity because the plaintiff "failed to explain what discovery she did have, why it was inadequate, and what she expected to learn from further discovery."

Albemarle was not required to provide statistical information about the 1993 RIF because the magistrate judge concluded that such evidence was irrelevant to Mrs. Bauer's termination a year and four months later. The district court ruled that, assuming Mrs. Bauer could prove all that she sought to discover, her claim could not survive summary judgment. *See Crum v. American Airlines, Inc.*, 946 F.2d 423, 429 (5th Cir. 1991) (summary judgment not premature where discovery sought could not have aided plaintiff). Statistical evidence can be utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation. *Hollander v. American*

9

*Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990). However, more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee, such as the employee's disloyalty in giving aid and comfort to the employer's competitors. *See Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992) (per curiam). In the present case, the statistical evidence did not have substantial probative value, as Mrs. Bauer was discharged more than a year after the 1993 RIF.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.